**STATE of Missouri, Respondent,**

v.

**Rudy Martin CAMACHO, Appellant.**

**No. 49245.**

Supreme Court of Missouri,

Division No. 1.

May 14, 1962.

Robert L. Rodarte, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Charles H. Sloan, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

A jury convicted Rudy Martin Camacho of burglary, second degree, and stealing.

(§§ 560.070 and 560.156, RSMo 1959 and V.A.M.S.) He has appealed from the ensuing sentence and judgment of imprisonment in the penitentiary for two consecutive two-year sentences.

Appellant's first point is that the court erred in admitting in evidence two written statements, signed by appellant (a detailed confession and a statement identifying a police photograph as that of the purchaser of the stolen goods) for the reason that the state did not prove the statements were made voluntarily; that they were not made voluntarily, but were obtained by the use of force and threats.

■ Prior to the introduction of the confession the court, outside the hearing of the jury, heard appellant's motion to suppress. Appellant's counsel examined the two police officers who took the written statements. The officers testified they took appellant from the county jail to police headquarters; did not recall whether they handcuffed him; advised appellant of his constitutional right not to make a statement and to consult with friends or an attorney; gave him an opportunity to obtain counsel and to make a telephone call for the purpose (but appellant did not request an attorney or accept the offer); that the statements, in question and answer form, were taken by a detective in longhand, typed by a secretary, presented to appellant, read and signed by him; that appellant voluntarily agreed to make the confession, gave the officers "the full story * * * the facts of the burglary" voluntarily, "entirely on his own * * * of his own free will," and without duress or force to his person; that he was asked but not told to sign it, and when asked if he would sign it said "Yes," did not refuse, but signed freely and voluntarily, without threats or promises; that the officers did not tell him that if he did not sign it they would "make it rough on him" and bring him before the grand jury, or that other burglary charges would be brought against him if he did not confess to this particular burglary. Appellant tes-

tified that although no physical force was used by the officers, they handcuffed him and said no jury would acquit him of the charge; that if he signed the statement they would "go easy" on him; that he refused to sign the statement at first but finally signed it, without reading it "good enough" but just glancing through it, because he was "scared of them making charges on other cases they said they had against" him; that the officers told him they would "bring it to the grand jury," bring four other burglary charges against him, if he did not sign. After hearing the evidence on the motion to suppress the court ruled there was no evidence to justify the exclusion of the confession; the evidence with reference to the voluntariness of the confession, pro and con, was put to the jury, and the statements were admitted in evidence.

Appellant argues that one officer testified it was possible that he could have threatened appellant, and this officer "did not deny that the confessions were involuntary." On cross-examination of the officer appellant's counsel asked whether it was "possible" that he could have threatened to bring other charges against appellant, to which the officer answered that it was *possible* that he might have made that statement. Considered out of context this answer arouses the intense concern of this Court on review. When read in context, however, it is obvious that the officer was talking hypothetically and meant there was opportunity for him to have done so—that it was within the realm of physical possibility—not that it may have happened. The record shows that the officer repeatedly testified positively that the confessions were voluntary; that he made no threats in obtaining them; that he had no knowledge of any other charges; and that he did not threaten to bring charges against appellant when in fact there were no charges which could have been brought. Finally the court interposed and asked this question to clarify the matter: "In an effort to get this defendant to sign this State's Exhibit 1, did you tell him that if he didn't do it that you would cause other charges, even though groundless, to be filed against him?," to which the officer answered "No, sir." There is no substance to this argument, and the point is ruled against appellant for the reason that the record contains an abundance of substantial evidence to support a finding that the written statements were voluntarily given by appellant without force or duress, threats or promises, and after appellant was advised of his constitutional rights and offered an opportunity to advise with friends and counsel. State v. Mace, Mo.Sup., 295 S.W.2d 99, 100.

Appellant's second point is that "appellant was denied a fair and impartial trial by jury because one of the jurors was prejudiced and withheld information during voir dire examination." On voir dire the assistant prosecuting attorney told the panel that the defense attorney was Mr. Robert Rodarte, who was pointed out at the counsel table. The panel was asked whether they knew Mr. Rodarte, and was told that Mr. Rodarte was associated in the practice of law with the law firm of Morgan, Thayer & Gum, consisting of George Morgan, Charlotte Thayer and Carl Gum, and asked whether any member of the panel was acquainted with any of the lawyers named. No juror responded and the state's attorney stated "I take it by your silence that you are not." At the hearing on the motion for new trial the affidavit of a legal secretary for the law firm was introduced. It stated that in August, 1961 a suit was filed against Theodore W. Welborn (one of the jurors who decided the case now on appeal) and others; that the petition was signed by George H. Morgan, one of the partners in the firm with which Mr. Rodarte was associated in the practice of law; that personal service was had on Mr. Welborn on August 24, 1961; that the matter was satisfied in full and dismissal was filed in circuit court on October 28, 1961; that on October 27 a copy of the dismissal signed by Charlotte P. Thayer was mailed to Mr. Welborn; that sometime during the week of October

30, 1961 Mr. Welborn's wife came to the law office and requested a signed and stamped copy of the dismissal, which was subsequently mailed to Mr. Welborn; and that on July 27, 1961 lien letters were sent to Mr. Welborn over the signature of George H. Morgan on properties at two certain addresses in Kansas City (apparently properties owned by Mr. Welborn). The circuit clerk's file, showing that Mr. Welborn was one of the defendants in case No. 637,040, was offered and the court took judicial notice of the contents of the file. The trial of the case now being reviewed occurred on November 8, 1961. Mr. Welborn was not produced as a witness at the hearing of the motion for new trial, and the record does not indicate what actual knowledge, if any, Mr. Welborn may have had of the connection between plaintiff's lawyers in the litigation in which he was a defendant, and the lawyer for appellant.

Appellant contends there is "no doubt about his prejudice," although he concedes that "no one except that man knows what he had on his mind." Appellant complains that if the juror had given any indication about his dealings with appellant's lawyer's firm the lawyer would have examined the juror further, and asserts that the court abused its discretion in not granting a new trial on account of the prejudice of the juror. We are not so persuaded. Appellant has failed to show knowledge by the juror of the connection between the attorneys, or that if the juror had such knowledge he wilfully (as contrasted with inadvertently) withheld the information from court and counsel, or that the juror was prejudiced. This point is devoid of merit.

■ Appellant's third point is that "The prosecuting attorney acted improperly in having officers bring rebuttal witness Cervantes into the conference room and in talking to him before putting him on the stand without notifying Albert Cervantes' attorney who was also representing the appellant." The only authority cited by appellant for this point is Supreme Court Rules 4.07 and 4.09 V.A.M.R. which relate to legal ethics in the relations between lawyers on opposite sides of a controversy and encroachment by one lawyer upon the professional employment of another. By this point appellant has attempted to establish an impropriety on the part of the prosecuting attorney, but the point made preserves no error on the part of the circuit court. Supreme Court Rule 83.05, V.A.M.R. requires that a point relied on show what "actions or rulings of the *Court* are sought to be reviewed and wherein and why they are claimed to be erroneous * * *." (Emphasis supplied.) No action or ruling of the court is complained of, and therefore nothing is preserved for review. If appellant intended to raise the point that the court erred in allowing a rebuttal witness to testify without having had the witness properly subpoenaed, without notifying appellant's counsel of his intention to call the witness, and without giving appellant's counsel an opportunity to confer with the witness, no such point was preserved by objection at the trial. The only objection made at the trial was that the state had rested its case; that the case, both for the prosecution and the defense, "was through" and that to counsel this was a surprise. The objection, therefore, was waived.

We have examined the record in connection with those matters which we review even though appellant made no allegation of error with respect thereto, and have found no error therein.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.